UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-24432-CIV-ALTONAGA

EMIGDIO BEDOYA, on his own behalf
and all similarly situated individuals,

    Plaintiff,
v.

AVENTURA LIMOUSINE & TRANSPORT
SERVICE, INC., a Florida corporation, SCOTT
TINKLER, individually, NEIL GOODMAN,
individually, and RON SORCI, individually,

    Defendants.
_____/

## DEFENDANT'S MOTION TO DISQUALIFY PLAINTIFF'S COUNSEL, RICHARD CELLER, ESQ.

Defendants, Aventura Limousine & Transportation Service, Inc. ("Aventura"), by and through undersigned counsel, hereby file this Motion to Disqualify Plaintiff's counsel, Richard Celler, Esq., and states as follows:

### BACKGROUND

This is a wage and hour case brought under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* [D.E. 1]. Aventura is a local limousine company and Plaintiff was an independent contractor who previously performed contractual services for Aventura. Plaintiff provided services to Aventura from approximately 2005 through approximately June 2010. [D.E. 1 ¶ 26]. Plaintiff filed the instant case in the Southern District of Florida on December 9, 2011. [D.E. 1]. Chris Kleppin filed a notice of appearance on behalf of Aventura on January 30, 2012. Since filing this action, Plaintiff's counsel has systematically engaged in inappropriate and offensive behavior, including multiple violations of the Florida Rules of Professional Conduct; namely, Rules 4-1.6, 4-4.2, 4-4.4, 4-8.4, and Federal Rule of Civil Procedure 26(b)(5)(B).

In an email exchange between attorney Celler and defense co-counsel Jason Coupal, on January 30, 2012, attached hereto as Exhibit #1, attorney Celler openly admitted to blatantly violating Rule 4-4.2, by willfully engaging in an *ex parte* communication with Scott Tinkler

1

("Tinkler", who is Defendant's chief operating officer and was attorney Coupal's client at the time and is currently). *See e-mail dated January 30, 2012 at 9:06 a.m.* attached hereto as Exhibit #1; *See Affidavit of Scott Tinkler dated February 17, 2012*, ¶¶ 1, 8-11 attached hereto as Exhibit #6. Attorney Celler was obviously aware that Tinkler was represented by attorney Coupal as the very subject matter of the communication consisted of attorney Celler advising Tinkler that he would not negotiate a settlement while attorney Coupal represented Tinkler. *See e-mail dated January 30, 2012 at 9:06 a.m.*, attached hereto as Exhibit #1. Attorney Celler also stated to Tinkler that attorney Coupal should be replaced. *See Exhibit #6, ¶ 11.* When attorney Coupal alerted attorney Celler as to the impropriety of his actions, attorney Celler reiterated his communication with Tinkler, and in fact, defended the communication on the grounds that Tinkler initiated the contact. *See e-mail dated January 30, 2012 at 11:16 a.m.* and *e-mail dated January 30, 2012 at 11:22 a.m.*, hereto attached collectively as Exhibit #1. Coupal never gave Celler permission to talk about substantive matters in the case with Tinkler or any other representative of Aventura. (*Affidavit of Jason Coupal*, attached hereto as Exhibit 10).

In the same email exchange, attorney Celler violated Rule 4-4.4(a) via his unprofessional berating and degrading language towards attorney Coupal; notably the following: "No wonder you begged [attorney Celler's associate] not to have me on the next trial . . . ." "[I]t appears (from what I observed at trial), you are not a trial lawyer . . . ." "We are not interested, nor are our clients, in settlement discussions with you as long as you are the lawyer on the other side. You are causing your client a great disservice . . . ." "Time to put your boots on and get to work. No more whining, no more complaining about how you have no support staff, no more complaining about how much work you have to do . . . ." "Just to be clear in the future, tell your clients that we are willing to negotiate with them as long as you are not involved. You are an impediment to all of these proceedings. It's a shame." *See e-mail dated January 30, 2012 at 9:06 a.m.* and *e-mail dated January 30, 2012 at 11:22 a.m.*, hereto attached collectively as Exhibit #1. This corroborates Tinkler's assertions that attorney Celler was aggressive, obnoxious, and unreasonable in his interactions with attorney Coupal. *See Exhibit #6, ¶¶ 6-7.*

Attorney Celler also violated Rules 4-4.2 and 4-1.6 when he communicated with attorney Kleppin's client, Sasa Padurjan ("Padurjan"), ostensibly in an effort to gain a tactical advantage in the instant proceedings (and in the *Bedoya* and *Ceant* cases) and to attempt to manufacture grounds to disqualify attorney Kleppin. Attorney Kleppin represented Padurjan in an earlier case against

2

Aventura and therefore has an ongoing attorney-client relationship regarding the matter. *See Padjuran v. Aventura Limousine & Transp. Serv., Inc.*, Case No. 07-21650-CIV-HUCK; *Padurjn v. Aventura Limousine & Transp. Serv. Inc.*, Case No. 08-20128-CIV-HUCK. In fact, proceedings in *Padurjan* were ongoing as recently September of 2011, s*ee Padurjan v. Aventura Limousine & Transp. Service, Inc.*, 441 Fed. Appx. 684 (11th Cir. 2011), and the appeal order was returned merely three months ago. *See Padurjan v. Aventura Limousine & Transp. Serv. Inc.*, Case No. 08-20128-CIV-HUCK [D.E. 313].

How Celler learned that Kleppin would become co-counsel in the case (through an inadvertent disclosure) and how he acted on that inadvertent disclosure (by contacting Padurjan, rather than restraining himself from using information he learned through an inadvertent disclosure) is reprehensible and a bar violation. *Abamar Housing and Dev. Inc., v. Lisa Daly Lady Décor, Inc.*, 698 So. 2d 276, 278-79 (Fla. 3d DCA 1997) (prohibiting the use of privileged documents that have been inadvertently disclosed). Plaintiff's counsel learned of attorney Kleppin's anticipated representation of Aventura *before* attorney Kleppin filed his notice of appearance due to an inadvertent disclosure that was made within documents mistakenly produced to Plaintiff's counsel in the case of *Schatt v. Aventura Limousine & Transp. Serv., Inc., et al.*, Case No. 10-22353-CIV-COOKE. Plaintiff's counsel Schulman alerted defense counsel Coupal to finding this inadvertent disclosure on January 11, 2012. *See e-mail dated January 11, 2012 at 7:21 p.m.*, attached hereto as Exhibit #2. Less than thirty (30) minutes later, Plaintiff's counsel Celler sent an e-mail notifying defense counsel Coupal that he will be moving to disqualify attorney Kleppin when attorney Kleppin appears in the case, and also threatening to name Sasa Padurjan as a witness, with the implication that if he does so Kleppin will be disqualified. *See e-mail dated January 11, 2012 at 7:50 p.m.* The fact that these two e-mails came within such a short time of one another, coupled with the fact that Plaintiff's counsel threatened to name Padurjan as a witness in the case within the same e-mail that he sent conferring about the disqualification, expose the Plaintiff's true purpose for listing Padurjan as a witness (*i.e.*, to attempt to manufacture a conflict in order to get attorney Kleppin disqualified). Padurjan, not in this case, not in *Bedoya*, nor in *Schatt*, was never even on Celler's radar screen as a witness, until he learned that Kleppin was to become an attorney for Aventura.

3

This conclusion is further supported by the fact that despite being involved in various other lawsuits[1] against the Defendants, and despite exchanging witness lists and discovery responses in some of these cases, Plaintiff's counsel never identified Sasa Padurjan as a potential witness in any litigation against the Defendants, until Claimant's Motion to Disqualify Respondent's Attorney, Chris Kleppin, and Incorporated Memorandum of Law Exhibit A, dated February 7, 2012, attached hereto as Exhibit #3. Celler's The Preliminary Witness List in *Coelho v. Aventura Limousine & Transp. Serv., Inc., et al.,* Case No. 10-23228-CIV-COOKE is attached hereto as Exhibit 7, and clearly shows that Padurjan was not listed as a witness; that case has been proceeding for about one and one-half years, and Celler's failure to list Padurjan as a witness in that case suggests that he is not an appropriate witness in these proceedings. The witness lists from the *Schatt* arbitration are attached hereto as Exhibit 8, and also show that Padurjan was not a witness in that case either, which again demonstrates that Celler is simply interjecting Padurjan as a witness in this case to attempt to disqualify Kleppin. This is particularly curious considering that: (1) Plaintiff's counsel has been aware of Sasa Padurjan all along in light of his prior lawsuit against the Defendants, and has told Coupal that he modeled[2] his current lawsuits after Padurjan's lawsuit, and has used many filings from that case (*Padjuran v. Aventura Limousine & Transp. Serv., Inc.*, Case No. 07-21650-CIV-HUCK; *Padurjan v. Aventura Limousine & Transp. Serv. Inc.*, Case No. 08-20128-CIV-HUCK), and (2) Padurjan's termination pre-dates the statute of limitations period for Plaintiff's claim in this case, thereby calling into question whether Padurjan has any relevant information to offer for the purposes of this lawsuit.[3] Even assuming *arguendo* that Padurjan did have relevant knowledge, given the approximately one-hundred (100) drivers who worked for the Corporate-

---

[1] Other lawsuits that Plaintiffs' counsel are involved in against the Defendants include: (1) *Coelho v. Aventura Limousine & Transp. Serv., Inc., et al.,* Case No. 10-23228-CIV-COOKE (Complaint filed on September 7, 2010); (2) *Schatt v. Aventura Limousine & Transp. Serv., Inc., et al.,* Case No. 10-22353-CIV-COOKE (in arbitration proceedings) (Complaint filed on July 16, 2010); and (3) *Ceant v. Tinkler, et al.,* Case No. 12-20159-CIV-SCOLA (Complaint filed on January 13, 2012).

[2] Plaintiff states in his Motion to Disqualify that "[t]he Complaint in this matter and the Complaints filed by Mr. Kleppin . . . are almost indistinguishable." [D.E. 35, page 5].

[3] Padjuran worked with the Defendant from February 16, 2002 through March 9, 2007. (*See Affidavit of Scott Tinkler* ¶ 12, attached hereto as Exhibit 6). However, the Plaintiff's Complaint in *Bedoya* was filed on December 9, 2011 ([D.E. 1]) which means that at a *hypothetical maximum,* the plaintiff Bedoya's statute of limitations period dates back to December 10, 2008, and the Complaint in *Coelho* was filed on September 7, 2010, which means that at a hypothetical maximum Plaintiff's statute of limitations period dates back to September, 2007, approximately six (6) months after Padurjan's service to Aventura ended. 29 U.S.C. § 255(a).

Defendant at the same time that the Plaintiff did (*See Affidavit of Scott Tinkler* ¶ 12, attached hereto as Exhibit 6), Plaintiff's counsel could clearly obtain the same information that Padurjan purports to have from a long list of other individuals, but instead specifically chose Padurjan. Plaintiff's Motion is notably devoid of explaining how Padurjan's testimony as a witness is not cumulative to these other individuals, because Padurjan's knowledge is *not* unique from these other individuals, further revealing the true reason why Padurjan was intentionally chosen by Plaintiff's counsel. For Plaintiff's counsel to have done this interfering in the attorney-client relationship Kleppin enjoyed with Padurjan is reprehensible.

Moreover, upon learning of defense counsel Kleppin's anticipated involvement in the cases of *Ceant v. Tinkler, et al.*, Case No. 12-20159-CIV-SCOLA and *Coelho v. Aventura Limousine & Transp. Serv., Inc., et al.*, Case No. 10-23228-CIV-COOKE, Plaintiff's counsel Celler conferred about filing similar motions in *Ceant* and *Coelho* also, transparently threatening to list Padurjan as a witness in those cases as well. (*See e-mail*, dated, Feb. 7, 2012, attached hereto as Exhibit 9) (indicating that plaintiff's non-opposition to a motion for extension of time to respond to the complaint in *Ceant* should not be viewed as a waiver to move to disqualify Kleppin); [D.E. 35 in *Bedoya*]. Celler actually filed a motion to disqualify Kleppin in Coelho, but the arbitrator denied it with prejudice, for Celler to re-file with the District Court, but Celler has stated that he and his client are currently mulling over whether to file it or not with the Court. Yet, interestingly, Padurjan was not identified as a witness in the case of *Schatt v. Aventura Limousine & Transp. Serv., Inc., et al.*, Case No. 10-22353-CIV-COOKE (the sole case of the four (4) cases that Plaintiff's counsel has against the Defendants in which defense counsel Kleppin is not involved), despite the fact that Schatt and Padurjan worked together for the Corporate-Defendant during a certain period of time. (*Witness Lists*, *Schatt v. Aventura*, attached hereto as Exhibit 8).

Concerning the affidavit of Sasa Padurjan attached to Claimant's Motion to Disqualify Respondent's Attorney, Chris Kleppin, this affidavit raises more questions than it answers. Notably, the affidavit does not reveal:   how Padurjan learned that attorney Kleppin is representing the Defendants *a mere day* after attorney Kleppin's notice was filed, how Padurjan learned that the instant lawsuit was filed, how attorney Celler came into possession of Padurjan's affidavit, whether Padurjan provided confidential information to attorney Kleppin about Plaintiff Bedoya in particular (stating only that confidential information was provided "regarding other drivers who *may* be part of this lawsuit" (*Affidavit of Sasa Padurjan*, ¶12) (emphasis added)), whether Padurjan even has

5

relevant knowledge concerning Plaintiff Bedoya, an explanation for the coincidental timing of his affidavit in *this* case; why Padurjan felt that it was important to state in the very first paragraph of his affidavit that he is not presently represented by counsel (*Affidavit of Sasa Padurjan*, ¶ 1), why Padurjan believes that he is an appropriate witness and/or class member in this case, and the basis for Padurjan's legal conclusions (such as his definition of a collective action, (*Affidavit of Sasa Padurjan*, ¶ 4), and the allegation that a conflict of interest exists. (*Affidavit of Sasa Padurjan*, ¶ 13). These questions need to be viewed in the context of the specter advanced in Padurjan's affidavit that Padurjan may decide to join the class, but he cannot say for sure at this point. This specter is ostensibly raised because if Padurjan does join the class, it strengthens Celler's argument that Kleppin is litigating against a former client in the same or similar manner (in fact, without it, Celler would have no argument). However, if Padurjan does join, it requires the conclusion that Celler improperly solicited him to join the class, which would require Celler's disqualification. *Hamm v. TBC Corp.*, 597 F. Supp. 2d 1338 (S.D. Fla. 2009) (disqualifying lawyer—Gregg I. Shavitz, Esq.—for improperly soliciting clients to join class actions in violation of Rule 4-7.4(a), and after Mr. Shavitz was disqualified, Mr. Celler took over), *aff'd*, 345 Fed. Appx. 406 (11th Cir. 2009). Given the backdrop that Padurjan released his claims and the statute of limitations would have run on any claims not released, it appears that Celler is misleading the Court with this specter that Padurjan may join the *Bedoya* suit, and is apparently misleading Padurjan. This deception—which may be the only reason Padurjan even agreed to sign the affidavit, that he was promised something in return because it was suggested to him by Celler he may somehow have a viable current claim against Aventura, when that cannot possibly be true—is highly inappropriate. The provision of such an affidavit, the motive behind it, and the manner in which Celler is using it is reprehensible and requires disqualification.

Unfortunately, given the language of Padurjan's affidavit, it appears that Plaintiff's counsel drafted the affidavit of Padurjan, solicited Padurjan to provide false testimony against his former lawyer, and induced Padurjan to sign the affidavit in order to manufacture a conflict for the purposes of Celler's own motions for disqualification that he has filed in this case and filed in Coelho (which was denied). If this is true, it is appalling to say the least; yet, it becomes even more appalling when considering that Plaintiff's counsel presumably *knows* that Padurjan cannot

be a class member in this lawsuit. The fact that Padurjan should know[4] this as well begs the obvious questions of who made Padurjan believe that he *could be* a class member in this lawsuit, and what was told to Padurjan to make him believe that. If in fact Plaintiff's counsel played a role in this, it would be par for the course considering all of his other outrageous behavior to date.

In addition to the foregoing ethical violations, attorney Kleppin inadvertently disclosed a privileged email to Celler, which Celler has not only refused to return and disregard, but has used the contents as an offensive weapon. *See* Claimant's Motion to Disqualify Respondent's Attorney, Chris Kleppin, and Incorporated Memorandum of Law, Exhibit B ("Claimant's Motion to Disqualify"), dated February 7, 2012, attached hereto as Exhibit #3. Kleppin notified Celler of the inadvertent disclosure minutes after its transmission, and asked that contents be ignored and not used in any way in light of the privileged nature of the communication (one co-counsel to another). *See e-mail dated February 7, 2012 at 1:59 p.m.*, attached hereto as Exhibit #4. Instead, Celler mistakenly believes the document proves a ridiculous conspiracy by Defendants to unduly delay the pending proceedings, but Aventura has sought to delay the arbitration only because of the disqualification motion, which position is supported by the case law,[5] and Aventura has not previously sought an extension of time with respect to the arbitration date. *See e-mail dated February 7, 2012 at 1:57 p.m.*, attached hereto as Exhibit #4. Celler is even relying upon the contents of this privileged email, *inter alia*, as grounds to dismiss Kleppin. *See*

---

[4] Certain terms of the Plaintiff's settlement agreement in the case of *Padurjan v. Aventura Limousine & Transp. Serv., Inc.*, Case No. 08-20128-CIV-HUCK (which was confidential and therefore will not be discussed specifically herein), place considerable restrictions on Padurjan's interest in becoming a class member in the instant case. Padurjan signed a release of all known and unknown claims. Further, the applicable statute of limitations precludes him from bringing any FLSA, unjust enrichment, or declaratory relief claims. Moreover, Celler knows that he can never represent Padurjan, because to do so would constitute representing an individual whom the lawyer obviously solicited, which is an independent bar violation, and which warrants disqualification. R. Regulating the Fla. Bar 4-7.4(a); *Hamm v. TBC Corp.*, 597 F. Supp. 2d 1338 (S.D. Fla. 2009) (disqualifying lawyer—Gregg I. Shavitz, Esq.—for improperly soliciting clients to join class actions in violation of Rule 4-7.4(a), and after Mr. Shavitz was disqualified, Mr. Celler took over), *aff'd*, 345 Fed. Appx. 406 (11th Cir.).

[5] When issues of disqualification arise, courts have recognized the suitability of staying any further proceedings until such issues are resolved. *Penn Mut. Life Ins. Co. v. Berck*, 2010 WL 3294309, *3 (D. Md. 2010) (staying any further proceedings pending the resolution of the disqualification issue); *Airgas, Inc. v. Cravath, Swaine, & Moore, LLP*, 2010 WL 624955 (E.D. Pa. 2010) (granting a temporary stay until the disqualification issues were resolved).

*Claimant's Coelho's Motion to Disqualify* at 5-6.  Such behavior directly violates numerous requirements of Rule 26(b)(5)(B) of the Federal Rules of Civil Procedure and Rule 4-8.4 of the Florida Rules of Professional Conduct.

## MEMORANDUM OF LAW

**I.    The Legal Standard Applicable to Disqualification Motions**

While the Code of Professional Conduct does not contain an express provision prohibiting the appearance of impropriety, Florida law clearly retains this requirement. *Rentclub, Inc. v. Transamerica Rental Finance Corp.*, 811 F. Supp. 651, 654 (M.D. Fla. 1992) (citing *State Farm Mut. Auto Ins. Co. v. K.A.W.*, 575 So. 2d 630, 633 (Fla. 1991)).  In *K.A.W.*, the Florida Supreme Court ruled that attorneys must still avoid even the appearance of professional impropriety.  Numerous courts in Florida, including the federal district courts, follow this rubric.  *Id.*; *see also Hollywood Mobile Estates Ltd. v. Seminole Tribe of Fla.*, 2008 WL 2959853, *1 (S.D. Fla. 2008); *Herrera-Shorthouse v. La Cubana Bail Bonds, Inc.*, 1999 WL 33266031, *5 (S.D. Fla. 1999); *Concerned Parents of Jordan Park v. Housing Auth. of the City of St. Petersburg*, 934 F. Supp. 406, 410 (M.D. Fla. 1996).  Accordingly, it has been held "even an appearance of impropriety may, under the appropriate circumstances, require prompt remedial action from the court . . . .   Consequently, any doubt is to be resolved in favor of disqualification."  *Id.* (citing *MMR/Wallace Power & Industrial, Inc. v. Thames Associates*, 764 F. Supp. 712 (D. Conn. 1991)).

The basic legal test for the issues governing disqualification in this case based on the appearance of impropriety that has been raised from Celler's misconduct is the following two-prong test:  1) although no proof of actual wrongdoing is required, there must exist a reasonable possibility that some specifically identifiable impropriety in fact occurred; and 2) the likelihood of public suspicion must outweigh the social interest that will be served by counsel's continued participation.  *Id.* (citing *Norton v. Tallahassee Mem. Hosp.*, 689 F.2d 938, 941 (11th Cir. 1982)).

**II.   Celler's Violations or Possible Violations of the Florida Rules of Professional Conduct that Require His Disqualification Under the Appropriate Legal Standard**

   **A.    Florida Rule of Professional Conduct Rule 4-4.2**

Florida Rule of Professional Conduct Rule 4-4.2(a), states in relevant part, "[i]n representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer

8

has the consent of the other lawyer." R. Regulating Fla. Bar 4-4.2(a). Lawyers have been disqualified for violating Rule 4-4.2. *Rentclub, Inc. v. Transamerica Rental Finance Corp.*, 811 F. Supp. 651, 654 (M.D. Fla. 1992) (disqualifying attorney for having improper *ex parte* contact with a represented party),

Celler's admitted communication with Tinkler is a strikingly obvious, admitted violation of this rule. Celler openly acknowledged his communication with Tinkler to attorney Coupal. *See Exhibit #1,* at *e-mail dated January 30, 2012 at 9:06 a.m.* (stating, "[y]ou are causing your client a great disservice. If you were not on the other side of the table, we would have a better chance of any resolution and would sit with the principals of the company. *I have told Scott Tinkler this.*") (emphasis added). Such a communication is a *per se* violation of Rule 4-4.2. It is clear that this communication occurred outside the presence of Celler, otherwise, Celler would not have felt the need to inform Coupal that the communication occurred. Celler makes no attempt to justify this explicit violation, but instead proceeds to exacerbate his already precarious situation by defending the communication in another email two hours later. *See Exhibit #1, e-mail at 11:22 a.m.* (stating, "Scott approached me during the hearing and we talked about it. If you feel a bar greivance [sic] is appropriate considering the fact that your clients have emailed me after I advised them to go through you, then do what you have to do. I have the writings to back up my position."). Celler's defense is entirely without merit, as Tinkler's initiation of the communication in no way absolves attorney Celler of this ethical breach. This is so because Rule 4-4.2 "applies even though the represented person initiates or consents to the communication. A lawyer must immediately terminate communication with a person if, after commencing communication, the lawyer learns that the person is one with whom communication is not permitted by this rule." R. Regulating Fla. Bar 4–4.2 cmt. Nevertheless, Tinkler disputes Celler's contention that he initiated any communication with attorney Celler, and states that attorney Celler actually accosted him in a hallway. *See Exhibit #6*, ¶ 8.

Celler further violated Rule 4-4.2 when he reached out to Padurjan and communicated with him regarding his prior case against Aventura. Kleppin represented Padurjan in this prior matter over a period of years, and therefore Kleppin and Padurjan enjoy an ongoing attorney-client relationship with respect to the matter. This has long been the belief of the Florida Professional Ethics committee, which stated:

9

> It is the opinion of a majority of the Committee *that entry of the judgment and expiration of the appeal period do not automatically terminate the attorney-client relationship* between the defendant and his lawyer. In the opinion of the majority, there are many matters remaining to be resolved from the point of view of the judgment debtor about which the debtor may continue to consult his lawyer. The majority concludes, therefore, that the provisions of Canon 9 of the Canons of Professional Ethics are still applicable and that *counsel for the plaintiff should not directly communicate with the defendant unless and until he has obtained consent from the attorney who represented the defendant in the litigation.*

Florida Professional Ethics Committee, Opinion 65-3 (Jan. 20, 1965) (emphasis added), attached hereto as Exhibit #5. The existence of an attorney-client relation between Padurjan and Kleppin is acknowledged, and even argued by Celler in Claimant's Motion to Disqualify Respondent's Attorney Chris Kleppin. *See* Plaintiff's Motion to Disqualify at 3-4 [D.E. 35]. Celler clearly communicated with Padurjan regarding his earlier case without Kleppin's consent. The affidavit Celler filed on Padurjan's behalf squarely addresses the prior case, and Celler's behavior is in direct contravention to Rule 4-4.2 by interjecting himself into the relationship between Padurjan and Kleppin.

Furthermore, the way in which Celler did it is particularly reprehensible, because he invaded the attorney-client relationship Kleppin enjoyed with Padurjan solely in order to manufacture an argument to attempt to get Kleppin disqualified—by soliciting Padurjan to become a witness by falsely suggesting to Padurjan that he may have some claim against Aventura, when that cannot be the case given the release Padurjan signed, and the passage of time which has caused the statute of limitations to expire. For Celler to do this to an individual who is still under representation by Kleppin is outrageous, and warrants his disqualification.

It is clear from the Affidavit of Padurjan that Celler violated the confidential attorney-client relation that Kleppin enjoyed with Padurjan, because the Affidavit of Padurjan discusses that Padurjan and Kleppin had confidential discussions about Padurjan and about other drivers (*Affidavit of Padurjan* ¶¶ 5, 12), that he settled his case only because of threats from Kleppin, and that those threats were that Padurjan would be responsible for paying Kleppin's firm's legal fees if he did not settle, *id.* ¶ 6,[6] and that Padurjan may and apparently wants to be a witness in

---

[6] This is entirely untrue, and was fabricated by Celler. The retainer agreements used by most FLSA attorneys in the Southern District (including by Celler, J.H. Zidell, P.A., and The Shavitz Law Group, P.A.) state that if the plaintiff attempts to fire or does fire the attorney, the plaintiff

10

the case and also wants to be added as a class member, if the Court will allow. *Id.* ¶ 8. It is pellucid that Padurjan would not be suggesting he wants to join the case, unless he was told by Celler that may indeed be able to join because he does have valid claims against Aventura. Thus, it should be clear to the Court that Celler induced Padurjan to sign the affidavit. This inducement requires disqualification of Celler, because it constitutes an inducement for Padurjan to disclose confidential information (information Kleppin and Padurjan discussed in an attorney-client relationship) to Celler. There is at least one case that disqualified the attorney for just such an inducement, and the disqualification occurred upon a finding that there appeared to be a reasonable possibility that the disqualified attorney improperly induced a represented party to disclose confidential information. *Rentclub, Inc. v. Transamerica Rental Finance Corp.*, 811 F. Supp. 651, 655 (M.D. Fla. 1992) (citing other cases); *American Protection Ins. Co. v. MGM*, 1986 WL 57464 (D. Nev.) (disqualifying attorney because of the pretext by the lawyer that a witness would be compensated created an apparent inducement by the witness to disclose confidential matters to the lawyer, who then attempted to use that information).

It is beyond cavil that Aventura can show here that a reasonable possibility of same occurred, as the Affidavit of Padurjan proves that it actually happened, not just that there is a reasonable possibility that it occurred. The fact that this was improper is shown by the timing, because Celler represented people against Aventura for years, including the *Schatt* case that went all the way through arbitration (the actual arbitration hearing) and Padurjan was never thought of as a potential witness, until 20 minutes after Celler learned that Kleppin was retained to represent Aventura. Then, Celler had the unmitigated gall and temerity to boldly admit his plan was to use Padurjan to disqualify another attorney (Kleppin). Not only is this a violation of the rules regulating the bar, and it is sanctionable conduct, and conduct which calls into question his fitness to practice law in Florida.

### B. Florida Rule of Professional Conduct Rule 4-1.6

This rule requires a lawyer to maintain confidentiality and imposes upon lawyers a correlative duty to refrain from inducing others to disclose confidential matters, and prohibits the

---

must pay all attorneys' fees incurred to date. Kleppin's firm's retainer agreement does not contain any such statement. Celler assumed that it did. This strongly suggests that Celler simply made up this allegation to prejudice Kleppin before the Court, and explains why Celler has been insistent that he be given a copy of the retainer agreement between Kleppin's firm and Padurjan (he has recently asked for it five (5) times).

use of that confidential information for the lawyer's gain.  R. Regulating the Fla. Bar 4-1.6; *Rentclub, Inc. v. Transamerica Rental Finance Corp.*, 811 F. Supp. 651, 655 (M.D. Fla. 1992).  As discussed above and in the preceding section, Celler clearly violated this rule.

An additional ground for disqualification exists because of a violation of this Rule.  During a deposition that occurred recently in the *Schatt* arbitration, Celler and Aventura agreed to engage in confidential settlement negotiations.  As part of those negotiations, Celler induced, with the possibility of settlement, Aventura to disclose how it paid its employee drivers.  The settlement discussions went nowhere, but it is clear that Celler used those discussions as a ruse to find out whether he believed that he could sue Aventura for how it compensated its employee drivers.  (*Affidavit of Coupal* ¶ 11, attached hereto as Exhibit 10).  Within a very short period of time, weeks, Celler brought the *Ceant* lawsuit, in which the plaintiff alleges that he was an employee driver for Aventura, and was not paid properly under the FLSA.  *Id.*  The fact that Celler would misuse confidential information like this, that he wrongly induced Aventura to disclose to him is an independent basis which warrants Celler's disqualification.

   **C.**  **Florida Rule of Professional Conduct Rule 4-4.4(a) & (b)**

In addition to unethically contacting opposing parties, Celler sought to degrade and berate Coupal in violation of Rule 4-4.4(a), which states, "In representing a client, *a lawyer shall not use means that have no substantial purpose other than to embarrass, delay, or burden a third person* or knowingly use methods of obtaining evidence that violate the legal rights of such a person."  R. Regulating Fla. Bar 4-4.4(a).  Celler's crude and offensive language directed at Coupal, discussed *supra*, served no purpose other than to attempt to degrade, embarrass, and intimidate Coupal.  This behavior is not appropriate for an officer of the Court.  *Oath of Attorney in Florida* (stating "To opposing parties and their counsel, I pledge fairness, integrity, and civility, not only in court, but also in all written and oral communications; I will abstain from all offensive personality . . . .").  Celler vigorously advocated to both Coupal and Coupal's clients (in violation of Rule 4-4.2 discussed, *supra,* § I.A.), that Coupal should withdraw from the proceedings because he was, *inter alia,* "not a trial lawyer," "doing his clients a great disservice," "whining," "an impediment to the proceedings," and "a shame."  *See Exhibit #1*.  Such language cannot plausibly be viewed as serving any constructive purpose whatsoever, other than to harass and embarrass Coupal.

Celler also intercepted an inadvertently disclosed email sent by attorney Kleppin, intended only for attorney Coupal. *See e-mail dated February 7, 2012 at 1:48 p.m.*, attached hereto as Exhibit #4. Celler was notified only minutes after the email's transmission of its inadvertent transmission. *See e-mail dated February 7, 2012 at 1:59 p.m.*, attached hereto as Exhibit #4. The content of the email was a privileged communication between co-counsel, and impose obligations on Celler under Florida Rule of Professional Conduct 4-4.4(b) and Federal Rule of Civil Procedure 26(b)(5)(B), which state:

> A lawyer who receives a document relating to the representation of the lawyer's client and knows or reasonably should know that the document was inadvertently sent shall promptly notify the sender.

R. Regulating Fla. Bar 4-4.4(b).

> *Information Produced*. If information produced in discovery is subject to a claim of privilege or of protection as trial-preparation material, the party making the claim may notify any party that received the information of the claim and the basis for it. After being notified, *a party must promptly return, sequester, or destroy the specified information and any copies it has*; *must not use or disclose the information until the claim is resolved*; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The producing party must preserve the information until the claim is resolved.

Fed. R. Civ. P. 26(b)(5)(B) (emphasis added). Instead of returning, sequestering, or destroying the contents of inadvertent disclosure, Celler did precisely the opposite, despite Kleppin's multiple requests to refrain from such behavior. In this regard, Celler instead used the inadvertently disclosed email as a weapon in his spurious quest to disqualify attorney Kleppin, attaching said email as an exhibit to Claimant's Motion to Disqualify Respondent's Attorney Chris Kleppin, and relying on same as a ground for the motion. *See* Claimant's Motion to Disqualify at 5-6, Exhibit B. In response, attorney Kleppin reiterated his concern to attorney Celler that the inadvertent disclosure not be published, asking attorney Celler to strike the email from Claimant's Motion to Disqualify. *See e-mail dated February 7, 2012 at 6:36 p.m.*, attached hereto as Exhibit #4. In light of attorney Celler's publication, attorney Kleppin also notified the Arbitrator as to the foregoing facts pertaining to the inadvertent disclosure, and requested the Arbitrator forward to attorney Kleppin any and all copies of Claimant's Motion to Disqualify with attached copies of the email, so that they could be destroyed. *See e-mail dated February 7, 2012 at 6:48 p.m.*, attached hereto as Exhibit #4.

13

There are cases that hold that disqualification is appropriate when an attorney obtains confidential e-mails and uses them against the other party. *Northwestern Nat'l Ins. Co. v. Insco, Ltd.*, 2011 WL 4552997, *7 (S.D. N.Y. 2011) (disqualifying lawyer for obtaining confidential e-mails during arbitration proceeding and using them as a basis for relief).

Celler's misconduct also violated Federal Rule of Evidence 502(b), which holds that the inadvertent disclosure of privileged information is not waived if the disclosure was inadvertent and the holder of the privilege took necessary and prompt steps to rectify the disclosure. *See Cleancut, L.L.C. v. Rug Doctor*, 2010 WL 149877 (D. Utah 2010). Florida's rules are similar. *Abamar Housing and Dev. Inc., v. Lisa Daly Lady Décor, Inc.*, 698 So. 2d 276, 278-79 (Fla. 3d DCA 1997). In *Abamar*, the privileged documents were inadvertently disclosed in response to a request for production. The attorney for Abamar promptly requested return of the documents when their disclosure was discovered. The other side refused, and instead used the documents against Abamar in various filings and in depositions. Abamar filed a motion directing the return of the documents on the ground of attorney-client privilege. The trial court denied the motion, but the Third District Court of Appeal granted *certiorari* and ordered that the documents be returned to Abamar. Aventura has had to file an independent motion requesting that the inadvertently disclosed document and all copies of same be provided to Aventura, as in that motion, Aventura requested that the e-mails be returned to it, and that the attached e-mail as Exhibit B to Claimant's Motion to Disqualify be stricken from the record, and any reference to the e-mail contained therein. Attorney Celler repeatedly violated the foregoing rules by: 1) not promptly returning and/or disregarding the contents of the email; 2) disclosing the email to a third party before resolution of the matter; and 3) including the email in Claimant's Motion to Disqualify. Honestly, what kind of a lawyer would learn he received a privileged communication, that such communication was requested to be given back and not to be used against Aventura, but would use it anyway and provide it to third parties? Not an ethical one.

### D.   Florida Rule of Professional Conduct Rule 4-8.4

Given the aforementioned violations, Celler is also in violation of Rule 4-8.4(a), (c), which state, respectively:

A lawyer shall not:

(a) Violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another; . . .

>   (c) engage in conduct involving dishonesty, fraud, deceit, or misrepresentation

R. Regulating Fla. Bar 4-8.4(a), (c). Celler's ethical breaches are numerous and substantial. He has conducted *ex parte* communications with represented parties (Tinkler and Padurjan), embarrassed and degraded attorney Coupal, and disseminated privileged communications received as a result of an inadvertent disclosure. The quantity and severity of these breaches permeate the totality of the proceedings and continue to persist. These issues are systemic and necessitate attorney Celler be disqualified. He obtained an affidavit from Padurjan that could not have been obtained but via deceit and for deceitful purposes, as discussed above.

### III.     Attorney Celler should be disqualified because of his ethical violations

The numerous violations of Florida's Rules of Professional Conduct, discussed, *supra*, should undoubtedly result in attorney Celler's disqualification from these proceedings. "A district court is obliged to take measures against unethical conduct occurring in connection with any proceeding before it." *Musicus v. Westinghouse Elec. Corp.*, 621 F.2d 742, 744 (5th Cir. 1980); *see also Santillana v. Florida State Court Sys.*, 2010 WL 4567827 *1 (M.D. Fla. 2010). Furthermore, "[a] motion to disqualify counsel is the proper method for a party-litigant to bring the issues of conflict of interest or breach of ethical duties to the attention of the court." *Musicus*, 621 F.2d at 744; *see also Santillana*, 2010 WL 4567827 at *1 (stating, "[w]here the rights of a particular party may be compromised by representation in which opposing counsel is engaged, then that party has standing to bring a motion to disqualify.") (citation omitted). While attorney Celler's actions almost certainly constitute bar violations, it is "incorrect . . . that breaches of attorney-client privileges or other ethical duties can only be raised in separate grievance proceedings brought against counsel." *Musicus*, 621 F.2d at 744.

Disqualification is an appropriate sanction in light of attorney Celler's repeated and deliberate breaches of specific ethical duties and the Court should not allow such unscrupulous behavior to continue. *Bettis v. Toys R Us*, 646 F. Supp. 2d 1273 (S.D. Fla. 2009) (disqualifying lawyer and disbarring him for 42 months for unethical practices), *aff'd sub nom. Spolter v. Suntrust Bank*, 403 Fed. Appx. 387 (11th Cir. 2010). "[W]here the district court's disqualification order is based on an allegation of ethical violation . . . . The court must clearly identify a specific Rule of Professional Conduct which is applicable to the relevant jurisdiction and must conclude that the attorney violated that rule . . . for its order to be upheld." *Schlumberger Technologies,*

*Inc. v. Wiley*, 113 F.3d 1553, 1561 (11th Cir. 1997); *In re Evergreen Security, Ltd.*, 363 B.R. 267, 301 (M.D. Fla. 2007).  As mentioned repeatedly, *supra*, attorney Celler breached Florida Rules of Professional Conduct 4-4.2, 4-4.4, and 4-8.4, any of which can serve as the Court's basis for his disqualification.

Other jurisdictions are in agreement with the Eleventh Circuit regarding unethical behavior.  For example, in *Tannahill v. United States*, 25 Cl. Ct 149, 163-64 (1992), the court noted, "[c]ourts clearly have the authority and the duty to prohibit or remedy litigation practices which raise ethical concerns or may constitute ethical violations."  *Id.*  Indeed, "the court is responsible to restrain conduct which has the potential for evolving into a breach of ethics before such conduct becomes ripe for disciplinary action." *Id.* (citing *In re Investigation Before Feb., 1977, Lynchburg Grand Jury*, 563 F.2d 652 (4th Cir. 1977)).  Such power is predicated on the notion that "judges have a responsibility to the public to police the professional behavior of the officers of their court and that the imposition of deserved sanctions is necessary to provide deterrence to unprofessional conduct." *Id.* (citations omitted).

Disqualification has been specifically mentioned in this context.  In *Faison v. Thornton*, 863 F. Supp. 1204, 1216 (D. Nev. 1993), the court stated, "another sanction which has been applied to remedy the problems created by an attorney's improper *ex parte* communications is the disqualification of the attorney. Courts have wide discretion in determining whether disqualification is required in a particular case and any doubt is resolved in favor of disqualification." *Id.* (citations omitted). In *Papanicolaou v. Chase Manhattan Bank, N.A.*, 720 F. Supp. 1080 (S.D. N.Y. 1989), the district court disqualified counsel for having *ex parte* communications directly with the opposing party, and stated, "[a]lthough courts should pause before depriving a party of the counsel of its choice, disqualification is appropriate when a lawyer's conduct might taint the case.  In general, then, a district judge should disqualify the offending counsel when the integrity of the adversarial process is at stake." *Id.* at 1083.  The court continued, "[a]lthough breaches of Model Rule 4.2[7] might not *necessarily* require disqualification . . . , courts considering violations of the Rule cannot abdicate their roles as guarantors of fair process.  If a lawyer's violation of Model Rule 4.2 might taint the trial, the

---

[7] Model Rule 4.2 of the American Bar Association Model Rules for Professional Conduct is nearly identical to Rule 4-4.2 of the Florida Rules of Professional Conduct and is clearly the inspiration for and basis of Florida's rule.

16

lawyer should be disqualified." *Id.* at 1084. There is clear authority that in light of attorney Celler's numerous ethical breaches, his disqualification is appropriate.

It is simply beyond comprehension that an attorney (Celler) would intentionally invade (and destroy—as Celler has Padurjan signing an affidavit that Kleppin threatened Padurjan and in so doing made him settle, when Kleppin possesses letters that were filed with the court in *Padurjan* documenting that from the outset of the litigation Padurjan wanted $20,000 to settle the case—and he received a lot more than that, as set forth in the Padurjan docket entries, because there were two court cases that Aventura had against Padurjan from which they released Padurjan, one for tort claims for uncapped damages, and the other had already resulted in a final judgment in favor of Aventura for approximately $2,000.00) the attorney-client relationship Kleppin enjoyed with Padurjan, all in a transparent, manufactured attempt to try to disqualify Kleppin when no legitimate grounds exist to disqualify Kleppin. Underscoring the outrageousness of Celler's misconduct is the fact that Padurjan stopped providing service to Aventura many months outside of the applicable statute of limitations for this case, particularly when coupled with 1) the fact that approximately 100 other drivers provided service during the statute of limitations in this case who can testify concerning the factors that concern whether an individual is an employee or independent contractor, and 2) Celler has just finished litigating two (2) arbitrations against Aventura, and in neither was Padurjan listed as a witness. Further, the unethical and inappropriate tactics of Celler to attempt to goad the parties he is suing to terminate their lawyer, and to state that he will not even entertain settlement negotiations until they do, and then when those parties seek to bring in new co-counsel (Kleppin) and Celler would then attempt to manufacture a disqualification of the new attorney, are repugnant actions that require disqualification, as is his request to settle the case for $7,500,000.00.

## **CONCLUSION**

For the foregoing reasons, the Defendant respectfully requests that this Court disqualify Plaintiff's counsel, Richard Celler from this matter.

**CERTIFICATE OF SERVICE**

     I HEREBY CERTIFY that on February 23, 2012, I electronically filed the foregoing document with the Clerk of Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record (Stacey Schulman, Esq. and Richard Celler, Esq.) or *pro se* parties identified on the attached service list in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel of parties who are not authorized to receive electronically Notices of Electronic Filing.

Respectfully submitted,

| | |
|---|---|
| Jason Scott Coupal, Esq. | Glasser, Boreth & Kleppin |
| Co-counsel for Defendants | Attorneys for Defendants |
| Aventura Limousine & Transportation | 8751 W. Broward Blvd. |
| Service, Inc. | Suite 105 |
| P.O. Box 80-0146 | Plantation, FL 33324 |
| Aventura, FL 33280 | Tel.  (954) 424-1933 |
| Tel. (305) 405- 1440 | Fax  (954) 474-7405 |
| Fax. (305) 405- 1452 | E-mail:  ckleppin@gbkemploymentlaw.com |
| E-mail:  counsel@aventuralimo.com |        samkraut@gbkemploymentlaw.com |

                                                By   s/Chris Kleppin_____

                                                   Chris Kleppin
                                                   Fla. Bar No. 625485

                                                 Seth Amkraut
                                                 Fla. Bar No. 90858