UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-24432-CIV-ALTONAGA/Simonton

EMIGDIO BEDOYA, *et al.*,

      Plaintiffs,

vs.

AVENTURA LIMOUSINE &
TRANSPORTATION SERVICE,
INC., *et al.*,

      Defendants.

_____/

## ORDER

**THIS CAUSE** came before the Court on Plaintiff, Emigdio Bedoya ("Bedoya['s]" or "Plaintiff['s]") Motion to Disqualify Defendants' Attorney, Chris Kleppin ("Motion") [ECF No. 35], filed February 1, 2012. Bedoya filed a Class Action Complaint ("Complaint") [ECF No. 1] on December 9, 2011, on behalf of himself and other employees and former employees similarly situated, against Defendants, Aventura Limousine & Transportation Services, Inc. ("Aventura"), Scott Tinkler ("Tinkler"), Neil Goodman ("Goodman"), and Ron Sorci ("Sorci"), alleging violations of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"). On January 30, 2012, Chris Kleppin ("Kleppin") filed a notice of appearance as co-counsel for Defendants.[1] (*See* [ECF No. 31]). Plaintiff now asks the Court to disqualify Kleppin based on conflicts of interest arising out of his previous representations. The parties have submitted abundant briefing

---

[1] Defendants are also represented by Kristopher Walter Zinchiak ("Zinchiak"), of the same firm as Kleppin (Glasser, Boreth & Kleppin, P.A.), and Jason Scott Coupal ("Coupal"), Aventura's General Counsel (*see* [ECF No. 13]). The Court does not find a Notice of Appearance filed on behalf of Zinchiak in the record; the first time he appears to have filed a document was February 10, 2012. (*See* [ECF No. 38]).

and evidence to the Court on the Motion.[2]  The Court has carefully reviewed the Motion, the

parties' submissions, the record, and the applicable law.

## I.    LEGAL STANDARD

Under Florida law, "[a]n order involving the disqualification of counsel must be tested

against the standards imposed by the Rules of Professional Conduct."  *Morse v. Clark*, 890 So.

2d 496, 497 (Fla. 5th DCA 2004) (citing *City of Lauderdale Lakes v. Enter. Leasing Co.*, 654 So.

2d 645 (Fla. 4th DCA 1995); *Cazares v. Church of Scientology of Cal., Inc.*, 429 So. 2d 348 (Fla.

5th DCA 1983)).  "The party moving to disqualify counsel bears the burden of proving the

grounds for disqualification."  *Armor Screen Corp. v. Storm Catcher, Inc.*, 709 F. Supp. 2d 1309,

1310 (S.D. Fla. 2010) (citing *In re BellSouth Corp.*, 334 F.3d 941, 961 (11th Cir. 2003)).  Faced

with a motion to disqualify, a court must "be conscious of its responsibility to preserve a

reasonable balance between the need to ensure ethical conduct on the part of lawyers appearing

before it and other social interests, which include the litigant's right to freely choose counsel."

---

[2]  Kleppin responded to the Motion ("Response") [ECF No. 51] on February 24 2012, and Plaintiff replied ("Reply") [ECF No. 62] on March 2, 2012.  Plaintiff further filed a Supplement to Motion . . . ("Plaintiff's Supplement") [ECF No. 90] on March 12, 2012.  The Court held an evidentiary hearing on the Motion, and on Defendants' own motions to disqualify Plaintiff's counsel, on March 13, 20, and 26, and April 2, 2012.  (*See* [ECF Nos. 94, 102, 111, 117]).  After the hearing, Defendants filed a Response to Plaintiff's Supplement . . . ("Defendants' Response to Supplement") [ECF No. 124] on April 3, 2012, and Plaintiff filed a Post-Hearing Brief in Support of Plaintiff's Motion . . . ("Plaintiff's Post-Hearing Brief") [ECF No. 126] on April 3, 2012.  Defendants filed a further Memorandum in Support . . . ("Defendants' Post-Hearing Brief") [ECF No. 128] on April 4, 2012.  Defendants filed a Notice of Supplemental Authority ("Defendants' Notice of Authority") [ECF No. 130] on April 4, 2012.

Defendants have filed their own motions to disqualify Plaintiff's counsel — Defendants' Motion to Disqualify Plaintiff's Counsel, Richard Celler, Esq. ("Celler") ("Motion to Disqualify Celler") [ECF No. 47], and Defendants' Motion to Disqualify Plaintiff's Counsel, Stacey Schulman, Esq. ("Schulman") and the Law Firm of Morgan & Morgan, P.A. ("Morgan & Morgan") ("Motion to Disqualify Morgan & Morgan") [ECF No. 82].  The Court will address these motions in a separate order.  The Court observes that as a general matter, in the briefs on the Motion, the parties have interspersed extensive discussions of the purported conduct that is the subject of the Motion to Disqualify Celler and the Motion to Disqualify Morgan & Morgan.  The Court will mention these arguments only to the extent that they are relevant to the present Motion.

*Woods v. Covington Cnty. Bank*, 537 F.2d 804, 810 (5th Cir. 1976).  "Disqualification of one's chosen counsel is a drastic remedy that should be resorted to sparingly."  *Armor Screen*, 709 F. Supp. 2d at 1310 (citing *Norton v. Tallahassee Mem'l Hosp.*, 689 F.2d 938, 941 n.4 (11th Cir. 1982)).  "Because a party is presumptively entitled to the counsel of his choice, that right may be overridden only if compelling reasons exist."  *BellSouth*, 334 F.3d at 961 (internal quotation marks and citations omitted).  Furthermore, "[s]uch motions are generally viewed with skepticism because . . . they are often interposed for tactical purposes."  *Yang Enters., Inc. v. Georgalis*, 988 So. 2d 1180, 1183 (Fla. 1st DCA 2008) (internal quotation marks, brackets, and citations omitted).

## II.    ANALYSIS

Plaintiff generally presents two reasons for bringing the present Motion.[3]  The first is that Kleppin's prior representations of individuals against Defendants create a conflict of interest and potential breach of confidentiality meriting Kleppin's disqualification.  Second, Kleppin's actions create an appearance of impropriety, whether or not Kleppin's previous representations technically disqualify him.  The Court addresses the parties' myriad arguments with respect to these two categories in turn.

### A.  Attorney-Client Relationship

Plaintiff asserts that Kleppin's earlier representations of individuals against Defendants disqualify him in this matter, as he is acting in a manner adverse to former clients.  (*See* Mot. 2).

The Supreme Court of Florida has described "an attorney's duty to maintain the confidences of his [or her] client" as a principle embodied in two rules of professional conduct — Rule 4-1.6 of the Florida Bar Rules of Professional Conduct ("Florida Bar Rule[s]"), and

---

[3]  At least, this is what the Court was able to discern from Plaintiff's numerous and poorly organized filings.  The Motion itself makes no mention of the relevant and applicable Florida Bar Rules, and the Court is left to divine Plaintiff's intent from the voluminous hearing records and later-filed briefs.

Florida Bar Rule 4-1.9. *State Farm Auto. Ins. Co. v. K.A.W.*, 575 So. 2d 630, 632 (Fla. 1991). Florida Bar Rule 4-1.6 provides that "[a] lawyer shall not reveal information relating to representation of a client . . . unless the client gives informed consent." FLA. BAR R. PROF'L CONDUCT 4-1.6. The purpose of this Rule concerning confidentiality is to engender "trust that is the hallmark of the client-lawyer relationship." *Id.* cmt. The Rule "affirmatively restrict[s] attorneys with 'inside' knowledge from using it for the gain of other clients." *Garfinkel v. Mager*, 57 So. 3d 221, 224 (Fla. 5th DCA 2010) (citing FLA. BAR R. PROF'L CONDUCT 4-1.6) (other citations omitted).

Florida Bar Rule 4-1.9 provides:

> A lawyer who has formerly represented a client in a matter shall not thereafter: (a) represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent; (b) use information relating to the representation to the disadvantage of the former client except as these rules would permit or require with respect to a client or when the information has become generally known; or (c) reveal information relating to the representation except as these rules would permit or require with respect to a client.

FLA. BAR R. PROF'L CONDUCT 4-1.9.

The Supreme Court of Florida has explained:

> The purpose of the requirement that an attorney maintain client confidences is twofold. It advances the interests of the client by encouraging a free flow of information and the development of trust essential to an attorney-client relationship . . . . However, it also serves a second purpose fundamental to a fair adversary system. Our legal system cannot function fairly or effectively if an attorney has an informational advantage in the form of confidences gained during a former representation of his client's current opponent.

*K.A.W.*, 575 So. 2d at 632 (internal citations omitted).

In order to succeed on a motion for disqualification on the basis of a conflict of interest, the party seeking disqualification must show: "(1) an attorney-client relationship existed, thereby

giving rise to an *irrefutable presumption* that confidences were disclosed during the relationship, and (2) the matter in which the law firm subsequently represented the interest adverse to the former client was *the same or substantially related* to the matter in which it represented the former client." *Id.* at 633 (emphasis added) (citing *Ford v. Piper Aircraft Corp.*, 436 So. 2d 305, 305 (Fla. 5th DCA 1983); *Sears, Roebuck & Co. v. Stansbury*, 374 So. 2d 1051, 1051 (Fla. 5th DCA 1979)).

The Court now turns to the specific previous representations Plaintiff asserts form a basis for Kleppin's disqualification.

### 1.    The Existence of an Attorney-Client Relationship

Kleppin has filed suits in the past on behalf of Sasa Padurjan ("Padurjan"), Stuart Kaufman ("Kaufman"), Viliam Kralovic ("Kralovic"), and David Talbot ("Talbot"), for which Bedoya provides the case numbers.[4]  (*See* Mot. 1–2).  These complaints were filed against Aventura and Goodman, alleging substantially the same FLSA claims as are alleged against Defendants here.  Plaintiffs assert that prior to filing a notice of appearance on behalf of Defendants, Kleppin did not seek the consent or waiver of his former clients.  (*See id.* 2).

According to Plaintiff, Kleppin's clients — Padurjan, Kaufman, Kralovic, and Talbot — "will be participants in this case" and during their litigations disclosed private, confidential information to Kleppin regarding themselves, Defendants, other drivers, and FLSA overtime claims.  (*Id.* 4).  Plaintiff calls the instant action "almost indistinguishable" from the prior suits Kleppin filed against Aventura.  (*See id.* 5).  Kleppin's clients all alleged claims under the FLSA against Aventura and Goodman with respect to misclassification of employment status as independent contractors.  (*See id.*).  The Complaint in this action alleges that Bedoya and others

---

[4]   These are Numbers 1:07-cv-21650 and 1:08-cv-20128 ("Padurjan Actions"); 1:06-cv-21735-WMH ("Kaufman Action"); 1:06-cv-22418-WMH ("Kralovic Action"); and 1:05-cv-23299-FAM ("Talbot Action").

signed contracts of adhesion that misclassified them as "independent contractors" and unjustly enriched Defendants as a result, including by failing to compensate Plaintiff and others for overtime pay.  (*See* Compl. ¶¶ 30, 40, 42).  Plaintiff thus accuses Kleppin of "trying to switch sides." (Mot. 4).

After filing the Motion, Plaintiff learned that Kleppin also enjoyed an attorney-client relationship with another alleged potential class member in this matter, Rodney Schatt ("Schatt"), who drove for Defendants as an independent operator from 2003 to 2010.  (*See* Pl.'s Supp. 1).  Schatt originally consulted with Kleppin about Schatt's potential claims against Defendants in 2010, prior to filing his action, and again in 2011, when he was looking for a new attorney to take over his case.  (*See id.*).  During these conversations, Plaintiff states Schatt told Kleppin, in some detail, about the nature of his claims, other potential class members affected, and which specific claims to assert, including FLSA claims, claims for reimbursement of fuel charges, and compensation on tax issues.  (*See id.* 1–2).  Plaintiff avers Schatt may participate in this action as a witness and a plaintiff, and has not waived any possible conflict arising from his attorney-client relationship with Kleppin.  (*See id.* 2).  According to Plaintiff, Schatt's claims are identical to Bedoya's, and "[b]ut for Mr. Schatt already having arbitrated his claims, he would be a part of the class pending conditional certification with the Court."  (*Id.*).  However, Schatt is still a member of the Rule 23 unjust enrichment class being sought, which claim he specifically discussed in detail with Kleppin, "and he most certainly is a witness in this case." (*Id.* 2–3).

As an initial matter, before turning to the merits, the Court dispenses with Defendants' argument that Bedoya lacks standing to challenge Kleppin's representation of Aventura, which Defendants contend only Padurjan may do.  (*See* Resp. 2).  "Where the conflict [between a lawyer and that lawyer's clients] is such as clearly to call in question the fair or efficient

administration of justice, opposing counsel may properly raise the question." FLA. BAR R. PROF'L CONDUCT 4-1.7 cmt.; *see also* FLA. BAR R. PROF'L CONDUCT 4-1.9 cmt. (citing FLA. BAR R. PROF'L CONDUCT 4-1.7 cmt. and recognizing that someone other than a client or former client may move for disqualification in conflict-of-interest situations). The purported impropriety of Kleppin's conduct, if proven, "is clear and [raises] the question of [the] fair and efficient administration of justice." *Kenn Air Corp. v. Gainesville-Alachua Cty. Reg'l Airport Auth.*, 593 So. 2d 1219, 1222 (Fla. 1st DCA 1992) (granting standing to a party to move to disqualify the opposing party's attorney because "switching sides and conflict of interest in simultaneous representation are two ethical violations that can be clearly seen by persons other than clients"). The Court finds Bedoya has standing to bring the present Motion.

Defendants never dispute that Kleppin represented the clients Plaintiff names, or that he failed to obtain a waiver from any of those clients. As to Schatt in particular, Defendants do not deny Kleppin's attorney-client relationship with Schatt, but state that should Schatt participate in the instant action, the situation "is curable, and does not require disqualification," for example by using co-counsel to conduct the cross-examination of Schatt and erecting a "Chinese Wall" between Kleppin and his co-counsel. (Defs.' Resp. to Supp. 1–3). The Court takes it as an undisputed fact therefore that Kleppin has had an attorney-client relationship with Schatt, Padurjan, Kaufman, Kralovic, and Talbot.[5]

However, the parties do dispute Kleppin's representation of potential collective action or class members in the Padurjan and Talbot Actions. According to Plaintiff, Kleppin's suits on

---

[5] The parties dispute to a certain extent (and frequently contradict themselves) as to whether these attorney-client relationships are ongoing or have ceased. In the Motion Plaintiff relies on *Morgan Stanley DW, Inc. v. Kelley & Warren, P.A.*, No. 02-80225-CIV, 2002 WL 34382748 (S.D. Fla. May 10, 2002), which applies the standard under Florida Bar Rule 4-1.9 applicable to former clients. (*See* Mot. 3). The Court therefore conducts its analysis of the Motion under Rule 4-1.9, while noting it is self-evident under the Florida Bar Rules Kleppin would have at least comparable obligations to current clients as well.

behalf of Padurjan and Talbot were filed on behalf of not only the named plaintiffs, but also on behalf of "all others similarly situated." (Mot. 2). As of the filing of the Motion, Plaintiff intended to pursue the present action as a collective action, and as a class action with respect to the claim for unjust enrichment. (*See id.* 2). Therefore, Plaintiff contends that through the Padurjan and Talbot Actions, Kleppin obtained confidential, litigation-related information about Plaintiff, other individuals who have filed opt-in notices in the present action, and other putative class members in this case, to the extent they overlap with collective action members Plaintiff contends Kleppin formerly represented. (*See id.*). As Plaintiff puts it, Kleppin "filed lawsuits on [sic], and sought to represent the interests of, [sic] those individuals and putative class members that are now suing his current clients." (*Id.* 4).

Defendants, nevertheless, state that in Padurjan's case, no collective action or class was ever certified. (*See* Resp. 12). This is true in the Talbot case as well. Because Kleppin did not actually represent a putative class in the Padurjan or the Talbot Action, Kleppin has no attorney-client relationship with potential class members in those suits; thus, there is no overlap with the current purported class or collective action, and there is no conflict of interest. (*See id.*). Defendants moreover contend that collective action or class certification is not appropriate here in any event, as one of the key issues in this case is whether Bedoya is an employee or independent contractor. (*See id.* 13).

In an attempt to clarify the issues, the Court first addresses whether Kleppin represented others similarly-situated to Padurjan or Talbot if no collective action was ever certified in those individual cases, for the purposes of the first prong of the test under Florida Bar Rule 4-1.9. The Court will later address the impact of Kleppin's representations on the current action, whether or not it proceeds on a collective or class basis, in its analysis below of the second prong of the test.

Defendants cite *Hammond v. City of Junction City, Kansas*, No. 00-2146-JWL, 2002 WL 169370 (D. Kan. Jan. 23, 2002), for the proposition that "[i]t is fairly well settled that prior to class certification, no attorney-client relationship exists between class counsel and the putative class members." *Id.* at *4 (collecting various district court cases) ("Here, no attorney-client relationship existed between Plaintiff's counsel and Mr. Hope by virtue of his being a potential member of the putative class."). A review of the dockets of Padurjan's two actions reveals that no opt-in notices were ever filed by other individuals, either. In the Talbot Action, only Kaufman himself filed an opt-in notice.

Plaintiff never contests this argument in his Post-Hearing Brief or otherwise, but rather appears to abandon it. Accordingly, the Court considers it undisputed that Kleppin did not have an attorney-client relationship with members of any putative class or collective action in the Padurjan and Talbot Actions. The representations by Kleppin at issue are those on behalf of Padurjan, Kaufman, Kralovic, Talbot, and Schatt alone. The Court turns to the second prong of the test for disqualification — whether "the matter in which the law firm subsequently represented the interest adverse to the former client was the same or substantially related to the matter in which it represented the former client." *K.A.W.*, 575 So. 2d at 633.

> 2. *Whether Kleppin's Previous Representations are Substantially Related to the Present Action*

"To be 'substantially related' to [an] action, . . . suits 'need only be akin to the present action in a way reasonable persons would understand as important to the issues involved.'" *Rentclub, Inc. v. Transam. Rental Fin. Corp.*, 811 F. Supp. 651, 656 (M.D. Fla. 1992) (quoting *In re Corrugated Container Antitrust Litig., Inc.*, 659 F.2d 1341, 1346 (5th Cir. 1981), abrogated on other grounds by *Gibbs v. Paluk*, 742 F.2d 181 (5th Cir. 1984)). In 2006, the Florida Supreme Court adopted the following comment to the rule regarding which matters are

"substantially related":

> Matters are "substantially related" for purposes of this rule if they involve the same transaction or legal dispute, or if the current matter would involve the lawyer attacking work that the lawyer performed for the former client. For example, a lawyer who has previously represented a client in securing environmental permits to build a shopping center would be precluded from representing neighbors seeking to oppose rezoning of the property on the basis of environmental considerations; however, the lawyer would not be precluded, on the grounds of substantial relationship, from defending a tenant of the completed shopping center in resisting eviction for nonpayment of rent.

*Waldrep v. Waldrep*, 985 So. 2d 700, 702 (Fla. 4th DCA 2008) (quoting *In re Amendments to the Rules Regulating the Fla. Bar*, 933 So. 2d 417, 445 (Fla. 2006)).

The Court addresses the arguments on this question with respect to each of Kleppin's previous representations below.

### a. Padurjan

One of the bases for finding a substantial relationship between the Padurjan Actions and the present one, according to Plaintiff, is Padurjan's status as a potential witness and class member in this matter. (*See* Mot. 2). In fact, Plaintiff attaches what is, on its face, a damning affidavit by Padurjan ("Padurjan Affidavit") [ECF No. 35-1], in which Padurjan confirms that his action was on behalf of a proposed class of drivers similar to himself, and that he provided Kleppin with

> significant and substantial confidential information regarding other drivers who worked for Aventura, discussions [he] had with other drivers while working for Aventura, and some of the personal information and concerns [they], collectively, as drivers, had with Aventura regarding the litigation. This continued throughout the representation.

(Padurjan Aff. ¶ 5). Padurjan states that he settled his case against his wishes based on threats from Kleppin that Padurjan would otherwise be responsible for paying attorneys' fees and costs. (*See id.* ¶ 6). He declares that he wishes to be a witness in the present action and to participate as

a class member if allowed.  (*See id.* ¶ 8).  Padurjan expressly states Kleppin never consulted him prior to taking on representation of Aventura, nor sought his consent in any way.  (*See id.* ¶ 10). Kleppin has "personal information" from Padurjan's previous case that could be harmful to Padurjan's interests, as well as "confidential and substantial information regarding other drivers who may be part of this lawsuit and are included in the class definition, [and] this too will be harmful to their interests."  (*Id.* ¶¶ 11–12).  Padurjan concludes, "I am not a lawyer but Mr. Kleppin's representation of Aventura for unpaid overtime like mine, appears to be a conflict of interest.  I do not consent to this conflict of interest."  (*Id.* ¶ 13).

Defendants acknowledge, "if Padurjan does join the class, it strengthens Celler's argument that Kleppin is litigating against a client in the same or similar manner."  (Resp. 6 (citing *Hamm v. TBC Corp.*, 597 F. Supp. 2d 1338 (S.D. Fla. 2009)).  Nevertheless, Padurjan testified at the evidentiary hearing that he had released all of his claims against Defendants in a settlement agreement, and that he had not read the portion of his affidavit averring that he wishes to be a witness or class member in this case. [6]  At the evidentiary hearing, Schulman herself admitted that Padurjan would likely be barred from joining a class or collective action.  (Mar. 20, 2012 Hearing Tr. [ECF No. 109] 35:7–12 (Schulman: "I haven't been through [Padurjan's] settlement agreement enough to be able to say whether or not he could or could not be part of the class or part of the collective, but my gut tells me, based on the fact that he had filed a prior lawsuit with you and settled that lawsuit, that he would probably be barred from being part of the misclassification part of the case."); Mar. 13, 2012 Hearing Tr. [ECF No. 100] 49:22–24 (Schulman: "I think it's clear Mr. Padurjan can't be a part of the misclassification part of the case, given that he settled those already with Aventura.")).  Schulman also admitted Padurjan cannot testify about Aventura's activities from 2008 to 2010, which was the time period relevant

---

[6]  This portion of the transcript containing Padurjan's testimony is not publicly available on the docket.

to the proposed collective action. (*See* Mar. 20, 2012 Hearing Tr. 78:12–13 (Schulman: "I happen to agree with Mr. Kleppin that [Padurjan] can't testify to what was going on at the company in 2008, 2009, 2010 . . .."); April 10, 2012 Order [ECF No. 136] (noting Plaintiff defined collective action members as drivers employed by Defendants between December 2008 and present)). Padurjan confirmed this during his own testimony. As to Bedoya's own action, he alleges he was employed with Defendants from 2005 to 2010. (*See* Compl. ¶ 26). Nonetheless, the parties have expressed some doubt as to whether this entire time period is at issue under the applicable statute of limitations. *See Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.*, 515 F.3d 1150, 1162 (11th Cir. 2008) ("The statute of limitations for claims seeking unpaid overtime wages generally is two years, but if the claim is one 'arising out of a willful violation,' another year is added to it.") (quoting 29 U.S.C. § 255(a)).

In its April 10, 2012 Order, which post-dated the evidentiary hearing, the Court rendered some of this discussion moot by denying Bedoya's motion for conditional certification of his FLSA action. The Court has made no ruling on any Federal Rule 23 class action certification with respect to unjust enrichment or any other claim in this case, but for the purposes of this Motion the Court will analyze the impact of Kleppin's previous representations on the present action assuming Padurjan may not participate in this action, and no such Rule 23 class is certifiable.[7]

---

[7] Without deciding anything with respect to this issue, the Court notes its skepticism of any Rule 23 motion by Plaintiff to certify a class action, which necessitates a showing of commonality among other factors, in light of Plaintiff's inability to make the requisite showing of other similarly-situated plaintiffs to satisfy the "lenient standard" of the initial notice stage for conditional FLSA collective action certification. *Cameron-Grant v. Maxim Healthcare Servs.*, 347 F.3d 1240, 1243 n.2 (quoting *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1218 (11th Cir. 2001)); *see also Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2551 (2011) (holding that commonality under Rule 23 requires that "claims must depend upon a common contention — for example, the assertion of discriminatory bias on the part of the same supervisor"); *Spellman v. Am. Eagle Exp., Inc.*, No. 10-1764, 2011 WL 4014351, at *1 n.1 (E.D. Pa. July 21, 2011) (denying a motion to reconsider a grant of conditional FLSA collective action certification

Plaintiff argues, as an independent basis for finding the Padurjan Actions and present matter are substantially related, that in the latter Kleppin is attacking work he performed in the former. (*See* Pl.'s Post-Hearing Br. 8). For example, in their opposition to Plaintiff's motion for collective action certification, Defendants cite the court's denial of Padurjan's motion for summary judgment in one of the Padurjan Actions. (*See* Defs.' Resp. in Opp'n to Pl.'s Mot. for an Order for Conditional Certfication . . . ("Opp'n to Conditional Certification") [ECF No. 104] 8). Four of the exhibits to that brief originated in Padurjan's cases. (*See* [ECF Nos. 104-2, 104-3, 104-6, 104-8]). In the brief, Defendants, through Kleppin, extensively discuss past litigation between Padurjan, related entities, and Aventura. Defendants assert, with respect to one of the Padurjan Actions:

> despite Plaintiff's contention of a clear-cut misclassification, in Padurjan's federal case, Judge Huck denied his Motion for Summary Judgment, finding that Padurjan's proper legal classification as a driver was a genuine issue of fact. . . . The sole reason why Judge Huck did not grant summary judgment in the favor of Aventura on the independent contractor issue was because Padurjan testified in his deposition that he was forced to incorporate, despite the fact that approximately twenty-six drivers provided affidavits in support of Aventura's summary judgment motion about half of which were incorporated and about of which [sic] were never incorporated.

(Opp'n to Conditional Certification 8). Defendants further argue, through Kleppin, that Padurjan (along with Schatt and another individual) are not appropriate opt-in plaintiffs for the collective action in this case because:

> In the recent hearing on the motions for disqualification, *it came out* that all three individuals have brought their own FLSA claims against Aventura, and they are therefore barred by the doctrine of splitting causes of action from joining this suit . . . . Further, *it came out at the hearing* on the motions to disqualify that Padurjan signed a release of all known and unknown claims against Aventura and also is barred by the statute of limitations . . . .

---

in light of *Wal-Mart*, stating that *Wal-Mart* did not affect the court's analysis of the "modest factual showing" required for initial conditional certification, but suggesting *Wal-Mart* could be persuasive authority at second, more rigorous stage of collective action certification).

(*Id.* 9 n.1) (emphasis added).  No doubt, Kleppin's prior representation of Padurjan did not hurt Defendants in eliciting the information they did at the hearing.  "[K]nowledge of specific facts gained in a prior representation that are relevant to the matter in question ordinarily will preclude [the later] representation."  *In re Amendments*, 933 So. 2d at 446.  More generally, Defendants' own Opposition to Conditional Certification brief more than satisfies the Court that Kleppin is effectively attacking his own previous work and the positions he took in his representation of Padurjan.  The Court has difficulty understanding how the current matter is *unrelated* to the Padurjan Actions if Defendants (and Kleppin) themselves cite those actions as persuasive or even controlling authority on questions central to this case.

Lest Defendants argue that the statements made in the Opposition to Conditional Certification are no longer relevant now that a collective action has been foreclosed in this matter, the Court will merely point out that those statements are also relevant to Bedoya's own individual action.  Not only do Defendants discuss Aventura's employment classification practices more generally, but the Court finds it highly likely that to the extent each employee's classification is fact-dependent, the parties will wish to compare and contrast the facts in the cases of Padurjan and Kleppin's other clients with those of the present action.  (*See* Defs.' Reply Mem. in Support of Their Mot. to Dismiss 10 [ECF No. 98] (citing one of the Padurjan Actions for dismissal of Padurjan's attempt to obtain declaratory relief as part of his FLSA action, in support of motion to dismiss Bedoya's own claim for declaratory relief)).

The authority Defendants cite on this point, *Health Care & Retirement Corp. of America, Inc. v. Bradley*, 961 So. 2d 1071 (Fla. 4th DCA 2007), is inapposite.  That case held that "each negligence case turns on its own facts," a maxim that does not apply here, where no negligence claims are alleged.  Moreover, Defendants' argument that if Padurjan is not even similarly-

situated to Bedoya for the purpose of the collective action certification inquiry, their cases cannot be substantially related either, is unpersuasive. (*See* Resp. 15–16). Even if Padurjan is not similarly-situated to Bedoya (a point as to which the Court has made no finding), this is irrelevant to whether the Padurjan Actions are substantially related to the present one. The test for substantial relationship turns on the "transaction or legal dispute." *In re Amendments*, 933 So. 2d at 445. Defendants have not shown the Court any authority for the proposition that similarity of *outcome* in the related matters is an element of the test as well. Thus, the Court finds that for the purposes of Florida Bar Rule 4-1.9, the action before the undersigned is substantially related to at least the Padurjan Actions. *See id.* at 445.

Defendants make an additional argument — that the knowledge Kleppin obtained during the Padurjan Actions "is no more than general knowledge that any defense lawyer would quickly obtain during discovery." (Resp. 20). They state the Padurjan Actions were heavily litigated, and the dockets of those matters contain a combined 380 docket entries and numerous depositions containing the information relevant to the cases, including the purportedly confidential information divulged to Kleppin. (*See* Defs.' Post-Hearing Br. 23). Apparently Defendants believe the *more* work an attorney does on behalf of a client, as evidenced by the number of docket entries, the *less* protection the attorney-client relationship commands. Needless to say, this bizarre proposition flies in the face of common sense and is not supported in the law.

The argument that Kleppin did not actually obtain any confidential information during his representations of Padurjan fails to convince. In the first place, it does not negate the substantial similarity between the matters. In the second, the law is clear that Plaintiff is not required to make *any* showing that confidential information was exchanged or used during the Padurjan

Actions — it is presumed that this occurred, and this presumption is "irrefutable." *K.A.W.*, 575 So. 2d at 633. The Supreme Court of Florida held, "[t]he presumption acknowledges the difficulty of proving that confidential information useful to the attorney's current client was given to the attorney. It also protects the client by not requiring disclosure of confidences previously given to the attorney." *Id.* at 634 (citing *Gov't of India v. Cook Indus., Inc.*, 422 F. Supp. 1057, 1060 (S.D.N.Y. 1976) (holding if two actions are substantially related, court will not require proof that attorney had access to confidential information, nor give weight to attorney's assertion that he or she had no access to nor possessed confidential information))). Thus, the court in *K.A.W.* held "actual proof of prejudice" is not a prerequisite to disqualification. *Id.* Defendants are presumably fully aware of this black letter law as they themselves cite *Health Care*, in which the court notes that it previously remanded the case to the trial court precisely for failing to apply the presumption of confidentiality. *See* 961 So. 2d at 1072.

The Court therefore finds Kleppin in violation of Florida Bar Rule 4-1.9, which in itself merits disqualification of Defendants' counsel in this action. Nevertheless, the Court will turn to Kleppin's other representations, the better to explore the allegations of his misconduct at issue.

b. Schatt

As discussed, the parties do not dispute Schatt's attorney-client relationship with Kleppin. Nor do they dispute that Schatt's Action is so related to Bedoya's that Schatt would be a proper witness in Bedoya's case. Defendants actually concede the ethical issue raised by Plaintiff with regard to Schatt, but state that the situation "is curable, and does not require disqualification," for example, by using co-counsel to conduct cross-examination of that witness. (Defs.' Resp. to Supp. 1–2). Defendants explain:

> At no point before or during Mr. Kleppin's representation of Defendants, has he disclosed any information whatsoever to co-

> counsel Jason Coupal or the Defendants regarding the contents of
> his consultation with Schatt.  With regard to the issue, Kleppin
> erected a proverbial "Chinese Wall" between himself and Coupal. .
> . . Kleppin certifies that, in order to remedy any potential conflict,
> he will in no way participate in any cross-examination of Schatt in
> any proceeding during this case.

(*Id.* 3).  Defendants note that at the evidentiary hearing on the Motion, it was Coupal who

questioned Padurjan and Schatt, not Kleppin.  (*See id.*).  Defendants state, moreover, that "[a]ny

concerns that the Court has should be assuaged by the fact that undersigned counsel has sought

ethical advice from an ethics expert the entire time, and has followed his advice.  Accordingly,

there have not been any ethical breaches on the part of defense counsel."  (*Id.* 5).

       Needless to say, the Court's concerns are not assuaged.  Where the parties have stipulated

to the fact of Kleppin's attorney-client relationship with Schatt, and where they have stipulated

to the substantial relationship between the Schatt and Bedoya Actions, Kleppin's empty

assurances as to an ethics expert and a "Chinese Wall" with co-counsel merit no credence.  This

is particularly true in light of Kleppin's general course of conduct and remarkably cavalier

attitude toward his ethical obligations, as is plain for his own clients to see.  Padurjan and Schatt

clearly expressed anger and frustration during the evidentiary hearing about what they perceive

as Kleppin's dishonest dealings with them.  Schatt testified, "I had wanted Mr. Kleppin to

represent me.  I knew that Sasa [Padurjan] — I am in touch with Dave [Talbot] all the time, we

all talk; and when his name came up representing the other side, it made me furious and

obviously did the same for the people I touch base with."  (Mar. 20, 2012 Hearing Tr. 101:24–

102:3).  When asked what Padurjan's reaction was when Schatt told him Kleppin had appeared

as Defendants' counsel in this matter, Schatt said "[a]nger would be putting it mildly."  (*Id.*

102:20).  Padurjan himself testified that he felt Kleppin was a "traitor" and had no business

representing Aventura — Padurjan likened the situation to a "circus."

Again, Defendants and Plaintiff spill a great deal of ink discussing the length of Schatt's conversations with Kleppin about his case, what exactly was said, and the general likelihood Schatt actually discussed confidential information or litigation strategy with Kleppin. Under this inquiry, however, such an analysis is wholly unnecessary, as it is legally presumed confidential information was exchanged; which legal presumption, moreover, clearly comports with common sense.

The Court finds Kleppin's continued representation of Defendants would be in violation of Florida Bar Rule 4-1.9, as it concerns Schatt.

c.  <u>Talbot, Kralovic, and Kaufman</u>

As to Talbot, Kralovic, and Kaufman, Defendants state these individuals "all stopped providing services for Aventura many months before Padurjan, and thus cannot possibly be witnesses or potential claimants." (Resp. 19). Defendants note, "[t]he statute of limitations is long gone, and they all signed releases." (*Id.* n.20). Indeed, in his Post-Hearing Brief, Plaintiff abandons any argument premised on these individuals altogether, instead focusing solely on Padurjan and Schatt. (*See* Pl.'s Post-Hearing Br.).

Whether Talbot, Kralovic, and Kaufman may be witnesses or active participants in this case, however, does not tell the Court whether Kleppin would nevertheless be attacking his previous work, particularly given that all three of their complaints allege Defendants misclassified plaintiffs as independent contractor drivers in violation of the FLSA. A review of the dockets reveals that all three actions essentially settled before orders on the merits were issued, although in Talbot's case the court issued an order denying conditional certification of a collective action. *See* No. 1:05-cv-23299-FAM [ECF No. 32] (S.D. Fla. Mar. 13, 2006). As should perhaps surprise no one, Defendants indeed cite that order in their Opposition to

Conditional Certification brief, as evidence that a court has denied conditional certification against Defendants.  (*See* Opp'n to Conditional Certification 17).  Moreover, Plaintiff argues in his motion for conditional certification that "Defendants have been sued on at least six (6) prior occasions in the Southern District of Florida over the last several years on the exact issue that is being raised in the matter — Defendants' illegal misclassification of these drivers as independent contractors," citing the cases of Talbot, Kaufman, and Kralovic, among others.   (Mot. for Conditional Certification 3 [ECF No. 39]).  In response, Defendants state that these cases do not persuade because Plaintiff "fail [sic] to disclose to the Court the simple, but crucial facts — in none of the cited cases has a judgment been entered against Defendants, and in the cases that settled, Defendants never admitted liability."  (Opp'n to Collective Action 16–17).  In other words, Defendants do not otherwise contest the similarity of the actions of Talbot, Kaufman, and Kralovic to the current case.  The Court finds Kleppin has attacked his previous work as counsel in related matters at least with respect to the issue of conditional certification.

Were Kleppin to continue as Defendants' counsel, evidence that he would be attacking his work as counsel to Talbot, Kaufman, and Kralovic on issues *other* than conditional certification is not as clear as in the case of Padurjan, given the earlier settlement of the former cases.  Nevertheless, the Court sees a certain perverseness in failing to find a conflict of interest with respect to these cases going forward, when Kleppin himself was responsible for the timing of their settlement.  Had he not settled those cases when he did, there may have been more judicial opinions he could now use to attack his former work, as he has consistently done at every possible opportunity.  The only difference is the fact of settlement, an element largely within his control.  The Court finds, under the circumstances, Kleppin's representations on behalf of Talbot, Kaufman, and Kralovic further support his disqualification on the basis of a

conflict of interest.

Kleppin's previous representations, therefore, satisfy the standard for disqualification. Defendants do not dispute that no waiver was obtained from any of these clients before Kleppin took on his current role as Defendants' counsel, as Defendants' position is that Kleppin was under no obligation to seek consent or waiver. (*See* Resp. 21). The Court therefore finds Kleppin disqualified from representing Defendants in this action pursuant to Florida Bar Rule 4-1.9.

### B. Appearance of Impropriety

Plaintiff contends, "there is no question that Mr. Kleppin's participation in this case has eroded Mr. Padurjan's and Mr. Schatt's trust in our legal system, and undermined their confidence that information shared with an attorney is truly protected and privileged information." (Pl.'s Post-Hearing Br. 10). Plaintiff states that even if no collective action was ever certified in Kleppin's previous representations, the fact that he sought to represent putative class members against his current clients is "switching sides" and confers an appearance of impropriety. (*Id.* 11).

In response to the charge that Kleppin's involvement in this action will "call into question the morality of our legal system," raise "public suspicion," and "erode the public trust in our judicial system," Defendants generally repeat arguments calling into question Plaintiffs' counsel's own conduct. (Resp. 21). Such mud-slinging does not, however, excuse Kleppin's own impropriety as relevant to the Motion at hand.

The Court cannot but agree with Plaintiff that Kleppin's conduct has had every appearance of impropriety — an unsurprising conclusion since the conduct is actually improper. The Court does not base its ruling solely on an appearance of impropriety, however, as "the mere

appearance of impropriety is no longer grounds for disqualifying a lawyer from representing a party to a lawsuit." *Herrmann v. GutterGuard, Inc.*, 199 F. App'x 745, 755 (11th Cir. 2006) (quotation marks and citation omitted) (holding that to grant a motion to disqualify, a court must "identify a specific rule of professional conduct applicable to that court and determine whether the attorney violated that rule," including rule on conflict of interest). The Court therefore does not grant the Motion on this independent basis.

### C.  Disqualification of Glasser, Boreth & Kleppin, P.A.

Also acting as counsel for Defendants is Zinchiak, from Kleppin's firm Glasser, Boreth & Kleppin, P.A. Zinchiak has not filed an individual notice of appearance, but is an attorney to be noticed for Defendants. Florida Bar Rule 4-1.10(a) provides:

> Imputed Disqualification of All Lawyers in Firm. While lawyers are associated in a firm, none of them shall knowingly represent a client when any 1 of them practicing alone would be prohibited from doing so by rule 4-1.7 or 4-1.9 . . .

FLA. BAR R. PROF'L CONDUCT 4-1.10. There are a few stated exceptions to this rule, none of which are applicable here. By the plain and unambiguous language of Rule 4-1.10, Zinchiak and the firm Glasser, Boreth & Kleppin, P.A. are also disqualified from representing Defendants in this matter. *See Castro v. State*, 597 So. 2d 259, 260 (Fla. 1992) ("A lawyer's ethical obligations to former clients generally requires disqualification of the lawyer's entire law firm where any potential for conflict arises.") (citing FLA. BAR R. PROF'L CONDUCT 4-1.10); *Freund v. Butterworth*, 165 F.3d 839, 863 n.33 (11th Cir. 1999) ("[A]ny conflict of interest attributable to [an attorney] imputes equally to 'his current partners and employees.'") (quoting *Cox v. Am. Cast Iron Pipe Co.*, 847 F.2d 725, 729 (11th Cir. 1988)).

Case No. 11-24432-CIV-ALTONAGA/Simonton

### III.    CONCLUSION

For the foregoing reasons, it is

**ORDERED AND ADJUDGED** that the Motion **[ECF No. 35]** is **GRANTED**.  Kleppin and the law firm of Glasser, Boreth & Kleppin, P.A. are disqualified from representing Defendants as counsel in this matter and relieved of all further responsibilities related to Defendants in these proceedings.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 30th day of April, 2012.

_Cecilia M. Altonaga_
**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc:    counsel of record