UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-24432-CIV-ALTONAGA/Simonton

**EMIGDIO BEDOYA,**

    Plaintiff,
vs.

**AVENTURA LIMOUSINE &
TRANSPORTATION SERVICE,
INC.**; **SCOTT TINKLER**;
**NEIL GOODMAN**; and **RON SORCI**,

    Defendants.
_____/

## ORDER

**THIS CAUSE** came before the Court on Defendants, Aventura Limousine & Transportation Service, Inc. ("Aventura Limousine"), Scott Tinkler, Neil Goodman, and Ron Sorci's ("Defendants[']") Motion for Summary Judgment ("Motion") [ECF No. 193], filed on July 13, 2012.[1] The Court has carefully considered the parties' written submissions, the record, and applicable law.

### I. BACKGROUND

From September 2005 until June 2010, Plaintiff, Emigdio Bedoya ("Plaintiff"), worked as a commission-paid driver for Aventura Limousine, a full-service transportation company that provides transportation in and around South Florida. (*See* Compl. ¶ 19 [ECF No. 1]; Decl. of Emigdio Bedoya ("Bedoya Decl.") ¶ 2 [ECF No. 198-1]). Like other Aventura Limousine drivers, Plaintiff drove out-of-state customers to and from the airport, seaport, and other locations within South Florida. (*See* Bedoya Decl. ¶ 10; Mot. 9). Plaintiff contends that even

---

[1] Plaintiff voluntarily dismissed with prejudice Count II of his Complaint and all claims against Defendant Ron Sorci. (*See* Order of Dismissal with Prejudice of Def. Ron Sorci and Count II of the Compl. [ECF No. 205]).

though he often worked over forty hours per week, Aventura Limousine failed to pay him overtime that he claims he is entitled to receive under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*. (*See* Compl. ¶¶ 31–33). Defendants counter that under the FLSA's Motor Carrier Act exemption, 29 U.S.C § 213(b)(1), Aventura Limousine is exempt from having to pay overtime to its employees, and thus Defendants are entitled to summary judgment. (*See* Mot. 4–10).

## II. LEGAL STANDARD

District courts are directed to grant summary judgment only when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(a), (c). "[T]he court must view all the evidence and make all reasonable inferences in favor of the party opposing summary judgment." *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc) (quoting *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995)). "An issue of fact is material if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Burgos v. Chertoff*, 274 F. App'x 839, 841 (11th Cir. 2008) (per curiam) (quoting *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (internal quotation marks omitted)). "A factual dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Channa Imports, Inc. v. Hybur, Ltd.*, No. 07-21516-CIV, 2008 WL 2914977, at *2 (S.D. Fla. Jul. 25, 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The movant's initial burden on a motion for summary judgment "consists of a responsibility to inform the court of the basis for its motion and to identify those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993) (internal quotation marks and alterations in original omitted) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "[T]he plain language of Rule 56 [] mandates the entry of summary judgment [] . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1292 (11th Cir. 2012) (quoting *Celotex*, 477 U.S. at 322).

### III. STATUTORY BACKGROUND

The FLSA sets a soft cap of forty hours per week that an employer can require its employees to work. *See* 29 U.S.C. § 207(a)(1). For every hour an employee works over forty hours, the employer must pay one and one-half times the employee's regular rate of pay. *See id.* The FLSA does, however, exempt certain classes of employees from its overtime protections. *See* 29 U.S.C. § 213. When an employer contends that its employees are not entitled to overtime, the burden is on the employer to establish the employees are exempt and all exemptions are construed narrowly against the employer. *See Walters v. Am. Coach Lines of Miami, Inc.*, 575 F.3d 1221, 1226 (11th Cir. 2009) (per curiam) (footnote call number omitted) (citing *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 594 (11th Cir. 1995) (per curiam)). The exemption under which Defendants claim that Aventura Limousine need not pay overtime is the Motor Carrier Act exemption, 29 U.S.C. § 213(b)(1).

The Motor Carrier Act exemption provides that any employee over whom "the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of section 31502 of Title 49," is not entitled to overtime. *Id.* The Secretary of Transportation has this power over "employees of . . . a motor carrier," 49 U.S.C. § 31502(b)(1),

but only if the motor carrier transports passengers, *inter alia*, "between a place in a State and a place in another State," *id.* § 13501(1)(A). Thus, if an individual is employed by a motor carrier that transports passengers in interstate commerce, he or she is not entitled to overtime. Although the language of the exemption is apparently straightforward, the term "motor carrier" is not self-defining and has meant different things over the years.

### A. Pre-2005 Definition of "Motor Carrier"

Before August 10, 2005, the term "motor carrier" was defined as a "person providing motor vehicle transportation for compensation." 49 U.S.C. § 13102 (12) (2000) (amended 2005 and restored 2008). The Motor Carrier Act exemption thus "applied to all drivers operating in interstate commerce regardless of the weight of the vehicle driven." *Buckner v. United Parcel Service, Inc.*, No. 5:09-CV-411-BR, 2012 WL 1596726, at *4 (E.D.N.C. May 7, 2012) (citation & internal quotation marks omitted); *see also Tews v. Renzenberger, Inc.*, 592 F. Supp. 2d 1331, 1343 (D. Kan. 2009) ("prior to August 10, 2005, the [Motor Carrier Act] exemption of the FLSA applied to most employees who drove any type and size of motor vehicle in interstate commerce" (citation omitted)). That changed, however, with the passage of the Safe, Accountable, Flexible, Efficient Transportation Equity Act: A Legacy for Users ("SAFETEA-LU"), which made the composition of a motor carrier's fleet highly relevant to the question of whether its employees were entitled to overtime. *See* SAFETEA-LU, Pub. L. No. 109-59, § 4142(a), 119 Stat. 1144, 1747 (2005).

### B. The SAFETEA-LU

Enacted in August 2005, the SAFETEA-LU modified the definition of "motor carrier" from "a person providing motor vehicle transportation," 49 U.S.C. § 13102(12), to "a person providing *commercial* motor vehicle transportation (as defined in [49 U.S.C.] section 31132),"

49 U.S.C. § 13102(14) (2005) (emphasis added). A "commercial motor vehicle" is defined as a motor vehicle that weighs at least 10,001 pounds *or* one that is designed or used to transport more than 8 passengers (including the driver) for compensation. *See* 49 U.S.C. § 31132(1)(A)-(B) (2006). [2]

Thus, beginning in 2005, a motor carrier was exempt from having to pay its employees overtime *only if* the vehicles the motor carrier owned: "(1) traveled . . . in interstate commerce; and (2) weighed over 10,001 pounds [or] were designed to transport more than 8 passengers including the driver . . . ." *Fox v. Commonwealth Worldwide Chauffeured Transp. of N.Y., LLC*, --- F. Supp. 2d ----, No. 08-CV-1686 (NGG)(RML), 2012 WL 1078230, at *5 (E.D.N.Y. Mar. 30, 2012) (footnote call number omitted). This represented a fairly significant change, as "employees of motor carriers . . . historically ha[d] not been entitled to overtime compensation." *Hernandez v. Alpine Logistics, LLC*, No. 08-CV-6254T, 2011 WL 3800031, at *3 (W.D.N.Y. Aug. 29, 2011). Congress's handiwork to the Motor Carrier Act exemption did not end with the SAFETEA-LU.

### C. The Technical Corrections Act

On June 6, 2008, Congress passed the SAFETEA-LU Technical Corrections Act of 2008 ("Technical Corrections Act" or "the Act"), Pub. L. No. 110-244, 122 Stat. 1572, 1620 (2008). For present purposes, the Technical Corrections Act made two important changes. First, it restored the previous definition of "motor carrier" to "a person providing motor vehicle transportation." *See* Technical Corrections Act § 305(c). "This change thus expanded the scope of the [Department of Transportation]'s authority to entities that operated *any* kind of vehicle . . .

---

[2] It is also true that vehicles used to carry hazardous materials qualify as "commercial vehicle[s]." 49 U.S.C. § 31132(1)(D) (2006). Neither party contends that Aventura Limousine uses its vehicles to transport hazardous materials, so the Court uses the term "commercial vehicle" in the narrow sense as a vehicle that either weighs 10,001 pounds or more *or* one that fits more than eight passengers (including the driver).

not merely entities that operated *commercial* motor vehicles." *Allen v. Coil Tubing Servs., L.L.C.*, 846 F. Supp. 2d 678, 704 (S.D. Tex. 2012) (emphasis added and internal citation omitted); *see also Hernandez*, 2011 WL 3800031, at *4 (the Technical Corrections Act "reinstat[ed] the jurisdiction of the Secretary of Transportation over drivers of both large and small vehicles" (citation omitted)). While this change seemingly made a vehicle's weight and capacity irrelevant to the application of the Motor Carrier Act exemption, that turned out not to be the case.

The second change the Act set in place retained the centrality of a vehicle's capacity and weight to the question whether an employee was entitled to overtime. This portion of the Act provides that a "covered employee" — *i.e.*, an individual whose work, in whole or in part, requires the operation of vehicles that weigh less than 10,001 pounds or are designed or used to transport eight or fewer passengers, including the driver[3] — is entitled to overtime notwithstanding the Motor Carrier Act exemption. *See* Technical Corrections Act § 306(a) (providing that 29 U.S.C § 207 "shall apply to a covered employee notwithstanding . . . 29 U.S.C. [§] 213(b)(1)[, the Motor Carrier Act exemption]"). Thus, under the Act, employees who drive non-commercial vehicles — those that weigh 10,000 pounds or less *and* fit less than nine people — are entitled to overtime. *See Hernandez,* 2011 WL 3800031, at *4 ("[A]lthough the

---

[3] The Technical Corrections Act § 306(c) defines a "covered employee" as:

> [A]n individual —
>   (1) who is employed by a motor carrier or motor private carrier . . . ;
>   (2) whose work, in whole or in part, is defined —
>       (A) as that of a driver . . . ; and
>       (B) as affecting the safety of operation of motor vehicles weighing 10,000 pounds or less in transportation on public highways in interstate or foreign commerce, except vehicles—
>           (i) designed or used to transport more than 8 passengers (including the driver) for compensation; . . . and
>   (3) who performs duties on motor vehicles weighing 10,000 pounds or less.

*Id.*

Technical Corrections Act explicitly reinstated the jurisdiction of the Transportation Secretary over drivers of both small and larger trucks, the Act also explicitly amended the FLSA to provide that drivers who met the definition of a covered employee would be entitled to overtime compensation regardless of whether or not the Transportation [Secretary] had jurisdiction to regulate the hours and conditions of those drivers." (citing *Miller v. Prof'l Transp., Inc.*, No. 3:09-cv-0111-RLY-WGH, 2010 WL 3398935, at *4 (S.D. Ind. Aug. 25, 2010))).

The Court pauses to emphasize that an employee's work need only *in part* involve the operation of non-commercial vehicles to be entitled to overtime. *See* Technical Corrections Act § 306(c). Thus, if more than a *de minimis* portion of Plaintiff's work involved driving non-commercial vehicles, he is eligible for overtime under the FLSA as a "covered employee." *See Mayan v. Rydbom Express, Inc.*, No. 07-2658, 2009 WL 3152136, at *9 n.12 (E.D. Pa. Sept. 30, 2012) (noting that "[e]ach employee's work hours and duties must be considered to ensure that his work with motor vehicles weighing 10,000 pounds or less is more than *de minimis*" (citation omitted)).

### IV. ANALYSIS

The first order of business is to determine the relevant time period for which Plaintiff is eligible to recover allegedly wrongfully withheld overtime. Under the FLSA, the statute of limitations is two years, unless the alleged violation of the Act was "willful." 29 U.S.C. § 255(a). In such a case, it would be three years. *See id.* Plaintiff contends that because he originally filed this lawsuit in state court on August 12, 2010, the relevant time period for his FLSA claim begins on August 14, 2007, even though he later voluntary dismissed the state court action. (*See* Resp. 3 [ECF No. 198]). Plaintiff is incorrect. The voluntary dismissal of a claim "has the effect of placing the parties in a position as if the suit had never been filed." *Dade Cnty.*

*v. Rohr Indus., Inc.*, 826 F.2d 983, 989 (11th Cir. 1987) (citation omitted); *see also Stein v. Reynolds Sec.*, 667 F.2d 33, 34 (11th Cir. 1982) ("dismissal of an earlier suit [] without prejudice does not authorize a subsequent suit brought outside of the otherwise binding period of limitations") (citation omitted). Thus, the relevant marker date from which one looks back three years is December 9, 2011 — the date Plaintiff re-filed his lawsuit in federal court — not August 14, 2007.

Because Plaintiff is eligible to recover overtime only for, at most, a three-year period beginning December 9, 2008, the Technical Corrections Act — not the SAFETEA-LU — is applicable to Plaintiff's claim. Thus, if Plaintiff spent more than an insubstantial amount of time driving non-commercial vehicles during this period he is entitled to recover overtime as a "covered employee."[4] *See Allen*, 846 F. Supp. 2d at 705 ("To be entitled to overtime pay, an employee must perform some meaningful work for more than an insubstantial time with vehicles [that] weigh[] 10,000 pounds or less [and fit less than nine people, including the driver].").

Plaintiff contends that this is indeed the case, as none of the vehicles he drove — or was permitted to drive — qualify as commercial vehicles since they weighed less than 10,001 pounds and were not designed to fit more than eight passengers (including the driver). (*See* Resp. 6 (citations omitted)). Notably, Defendants do not disagree. They instead advance a terse, one-page response to Plaintiff's contention, and argue that on facts very similar to those at issue here, the Eleventh Circuit in *Abel v. Southern Shuttle Services*, 631 F.3d 1210 (11th Cir. 2011) (per

---

[4] Defendants argue at length in both their Motion and Reply that Aventura Limousine qualifies as an interstate carrier for purposes of the Motor Carrier Act exemption. (*See* Mot. 4–10; Defs.' Reply 7–10 [ECF No. 206]). The Court need not — and does not — reach this issue, however, if Plaintiff qualifies as a "covered employee," as the Technical Corrections Act makes clear that "covered employees" are entitled to overtime under the FLSA *notwithstanding* the Motor Carrier Act exemption. *See* Technical Corrections Act § 306(a).

curiam), held that a group of plaintiffs could not qualify as "covered employee[s]." (*See* Reply 10–11 [ECF No. 206]).[5] Defendants are mistaken.

Contrary to Defendants' contention (*see* Reply 11), *Abel*'s facts are not substantially — or even remotely — similar to those at issue here, as the plaintiffs there drove only "large nine- and ten-passenger vans," *Abel*, 631 F.3d at 1212, i.e., *commercial* vehicles. Here, in contrast, it remains uncontroverted that Plaintiff drove only *non*-commercial vehicles — those weighing less than 10,001 pounds and designed to fit less than nine people. (*See* Resp. 4; Bedoya Decl. ¶ 13). To their credit, Defendants try to escape this salient difference by directing the Court to what, they claim, is an important similarity — that in *Abel*, as here, the plaintiffs drove vehicles that weighed less than 10,001 pounds. (*See* Reply 11). And so because the Eleventh Circuit did not find that the plaintiffs were entitled to overtime as "covered employees" in a case where the plaintiffs drove vehicles that weighed less than 10,001 pounds, then this Court should not either. (*See id.*). There are two major problems lurking in Defendants' logic.

First, even if Defendants are correct that the vehicles the plaintiffs in *Abel* drove weighed less than 10,001 pounds — and the Court has been unable to discern if this was in fact the case — they still could not have qualified as "covered employee[s]" under the Technical Corrections Act. This is because the test to qualify as a "covered employee" is conjunctive: the employee's responsibilities must at least, in part, involve the operation of a vehicle that *both* weighs less than 10,001 pounds *and* fits less than nine passengers (including the driver). *See* Technical Corrections Act § 306(c). If the employee spends his or her time in a vehicle that does not meet one or both of these conditions, then he or she cannot qualify as a "covered employee." *See id.* The plaintiffs in *Abel* thus could not have qualified as "covered employees" since, as the

---

[5] Defendants' cursory treatment of this issue in the Reply and the fact that they do not address whether Plaintiff was a "covered employee" in their initial Motion, is noteworthy, and regrettable.

Eleventh Circuit made clear, they all drove "large nine- and ten-person passenger vans." *Abel*, 631 F.3d at 1212.

Second, Defendants appear to suggest that the panel in *Abel* issued a holding to the effect that the Technical Corrections Act did not apply to the plaintiffs there. (*See* Reply 11 (noting that "[t]he only logical conclusion to be drawn [] is that the Eleventh Circuit did not believe the [SAFETEA-LU] to be applicable")).[6] Defendants do not persuade. The panel never addressed whether the SAFETEA-LU or Technical Corrections Act applied or whether the plaintiffs qualified as "covered employee[s]," which is unsurprising since neither party raised that issue in submissions to the court. *See, e.g.*, *United States v. Ford*, 270 F.3d 1346, 1347 (11th Cir. 2001) (per curiam) ("[I]ssues and contentions not timely raised in the briefs are deemed abandoned." (citations omitted)).

## V. CONCLUSION

To summarize, it is Defendants' burden to establish that Aventura Limousine was exempt from having to pay Plaintiff overtime under the FLSA from December 9, 2008 until the date his employment arrangement with Aventura Limousine ended. To do that, Defendants needed to establish that Plaintiff was not a "covered employee" under the Technical Corrections Act because, otherwise, Plaintiff was entitled to receive overtime. Defendants failed in this regard, and so the Court is left with no choice but to deny their Motion.

Consistent with the foregoing analysis, it is

---

[6] Defendants appear to treat the SAFETEA-LU and Technical Corrections Act interchangeably.

CASE NO. 11-24432-CIV-ALTONAGA

**ORDERED AND ADJUDGED** that Defendants' Motion **[ECF No. 193]** is **DENIED**.

**DONE AND ORDERED** in Miami, Florida, this 11th day of September, 2012.

_____
**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record